Mr. Sellers. Good afternoon. Don't take it personal because people walked out on you. I know. Tough crowd. May it please the court. I'm A. Phil Sellers on behalf of Rickey Scott. And of course, this case is on appeal from the Southern District of Mississippi, where the court ruled that there had been a detention of Mr. Scott, but found that the reasonable suspicion was based upon there being an anonymous tip. And that was in doing so, the court denied Mr. Scott's motion to suppress. You argued, I guess it was a 28 J letter in response to a 28 J letter. But somewhere you argued that that's a question of fact, whether there was a detention. But it's a little hard for me to tell whether the judgment factually was there a detention or is are the facts, is the legal conclusion from these facts a detention? Do you understand what I'm saying? In other words, there could be, well, the tone of voice and I decide that was a, you know, you better come back or something. I, you know, that that's a detention and that would be a finding of fact. But if the judge says, well, the question of whether a police officer saying you don't have to leave is enough to constitute a detention. That's a question of law, and that seemed to be to be more what the court was aiming at. So I'm wondering there, how do we review that? It's our position that the court ruled that this was a detention and it was a a finding of fact based on and if you look at mask and there's another case, a scene where it goes where it says that the court hearing this got to hear live testimony of Detective Harris, got to hear the interaction that detectives here said he had with Mr. Scott. And based on all of that, determine that there was a detention and the government attempted to argue that this was a consensual account, which they later argued in their own appeal. See, it doesn't seem like the court is saying based on some sort of fact dispute, like sometimes there's a situation where there was a witness who said, yeah, he was yelling and the officer says, no, I wasn't. I was just speaking in ordinary term and then that would be the sort of fact dispute the judge would have to resolve. But here the judge seems to be sort of musing about whether there's a detention at the point that the officer asked the defendant to step back over, which is an undisputed fact. And that seems to be a legal conclusion from a fact. And that is reviewed de novo. That's why I'm asking. I realize we're parsing this finally, but I don't see where the court resolved factual disagreements where one guy saying there was yelling or there was a wind and brandished or anything like that. It sounds like he's taking undisputed evidence and saying, is that a detention? And that's a question of law. Tell me where I'm wrong. I believe the court listened to the testimony and in the court in making his ruling. At first, it appeared the court didn't know whether it was a detention. Then it says, in my mind, it was a detention when Detective Harris told Mr. Scott to step back. In my mind, that was a detention. At that point, the court made a definitive ruling based on everything that it heard. Yes, but was that a determination of law or fact? That's what I'm trying to get at. And because it seems to me there wasn't any dispute about what happened for him to resolve some fact dispute. That's what I'm – am I making sense? I see what you're saying, whether it was in dispute of the facts that – whether or not Mr. Scott – the interaction was in dispute or anything of that nature. The interaction – So if we have an undisputed event in which the officer says you don't have to leave, then the conclusion of whether that statement is enough to constitute detention, that's a question of law. If there was a dispute about his tone of voice or whether he was shouting or, you know, whether he's brandishing a weapon, I mean, all of those are things I would agree that would be fact findings that we would give deference to. But kind of musing that once the detective says you don't have to leave, that's a detention, that seems like a question – a conclusion of law to me. Okay. And I understand Your Honor's question. I have a question about it, but I want you to go ahead and answer her question. Again – Just finish your answer and we don't have to thrash it. Yes. Again, I believe that the determination that there was a detention is based on – and in this particular instance, the court – it wasn't flushed out so much or disputed so much that he was told to come back, but the court still was making a factual finding that this – after hearing all the testimony from the detective that this was in fact a detention and that detention or that seizure should be – we should apply the clear error standard. And the court was in the best position to hear all of the facts concerning that issue. Yes, Your Honor. I'm sorry. Well, my question has to do with – it relates to Judge Haines' question. If Detective Harris testified that he didn't command or tell him that he couldn't leave, but the court still believed that the gentleman couldn't – didn't feel free to leave, then that is the court resolving a fact issue, isn't it? Because the officer's testifying that Scott voluntarily stopped. He says Scott voluntarily stopped, but the court is saying, I don't – I think that Scott felt compelled to stop. So that is a fact issue of whether Scott voluntarily stopped or whether Scott believed he was not free to go. And so what Scott believed – reasonably believed based upon the situation at hand is that there's a factual dispute on that, isn't there? One thinks it's voluntary and that he's voluntarily stopping, and one says he's not voluntarily stopping, that he feels compelled. So isn't that – Well, Your Honor, and if you put it that way, you're exactly right, and I think that's the point. The government was trying to assert that it was a consensual, hey, step back over here. The judge, hearing this testimony, said – and the standard being would a reasonable person in those circumstances feel free to leave – the judge determined in ruling that it was a seizure – So he heard the officer say Scott voluntarily stopped, and then the judge still said, I don't think he voluntarily did it. I think – and he's not saying he thinks the officers are not telling the truth. He's just saying that hearing what the officer said, it didn't make him believe that it was reasonable. I think he heard not only the officer saying – and the officer in one instance says we came up, he started walking off, and I asked him to step back over here. And another point he says he actually had him step back over here, but I think looking at the entire situation, the court got to consider – the officer testified that there were multiple police cars that pulled up on the scene. They were all wearing – they were unmarked cars in tactical gear. I think looking at the entire circumstances, the court felt that a reasonable person situated like Mr. Scott wouldn't have felt free to continue away from this situation when the officer said step back over here. And the government cites to a lot of cases on this consensual encounter situation, but typically in those cases it's posed as a question. It says can we talk, whereas the court got to hear the officer say step back over here is more of a command. So you're dealing with those two – The point was you don't have to leave. You don't have to leave. You can step back over here. So it's telling you you don't have to leave, but then the step back over here portion is more of a command language as opposed to saying in some of the cases cited by the government where they say, well, and typically those cases are appearing in airports, on airplanes, or buses. Can we talk? I think the court was resolving the issue there saying that this was a detention or seizure as opposed to a casual encounter because a reasonable person in that situation wouldn't feel free to leave the situation. Assuming, arguendo, that you don't get the deference that we would if it was a fact finding, what's your best case as a matter of law that this is a command? Well, there are several cases. One, in the California v. Herdera case, that case involved when the officers pull up, there are several kids, similar to this case, several people around a car. The kids took off fleeing in that case, and in that case the officer commanded the defendant to stop or to come back. Kept running, and the court's rationale in finding that there was a seizure in that case was because you have to submit to the command. But in this case, Mr. Scott did submit to the command, and in that case when the defendant was running, he dropped drugs. The court said that's acceptable. In this case, if he had stopped based on that assertion of authority, then the drugs would have been suppressed, similar to this case, if Mr. Scott, so you have this, it doesn't have to just be, and the government tries to argue that, well, if they don't make, the officer's intent wasn't to detain this individual. Well, they cite to the Brindlin case, which says, well, they only cite the first part about the intent shown, where if you look at what the reasonable person's standard. Hearing the statement, what would they perceive? Not an eggshell skull person who's afraid of the police extraordinarily or something, but what would a reasonable listener believe? Would they believe they were free to leave or not? Exactly, Your Honor, and we believe that the court hearing all this felt that under the circumstances, everything considered, Mr. Scott, when this officer said, hey, you don't have to walk away, step back over here, you don't have to leave, that a reasonable person wouldn't feel that they were free to leave. Step back over here, that that's a command from the officer. Yes, and the court, again, under mask, and the reason we have that standard is because the court is getting to hear this live testimony. It's getting to hear the officer determine the officer's credibility, determine whether or not his tone was authoritative, whether or not it was asking a simple question. So the court got to hear all of this and make that determination considering everything. Even if you went on that point, you know, we've come a long way since Terry v. Ohio, and reasonable suspicion is not very much, and why isn't the fact that your client adjusted his waistband, fidgeted, and walked away after noticing the police, combined with the tip and the officer's knowledge that this was a high-crime area, not enough? One, on the reasonable suspicion, the court addressed first that, well, the court ruled that it was the anonymous tip that started this emotion, and that was reasonable suspicion enough. Well, Florida v. J.L., Alabama v. White, Florida v. J.L. Well, I'll take Alabama v. White first. In that case, the anonymous tip gave very detailed information of this person is leaving this apartment, this person is going to, and it was very predictive. The court said, but the police did additional police work. In that particular case, because the court said this was a close call of this being reasonable suspicion, Florida v. J.L., still there's detail, young black male, plaid shirt, gun on waistband, officer show up. Court says that's not enough. Right. Assuming I agree with you that the anonymous tip is not enough by itself, why not in combination with those other things I just said? Are those other things in the record, first of all? Did he adjust his waistband? Is that in the record? Yes. Did he fidget? Is that in the record? Yes. Did he walk away after noticing the police? Is that in the record? It's in the record. I'm trying to be fair. It's what's in the record. That's in the record. Why can't you pile these things on where the tip wouldn't be enough, but all these things together? Well, and I'll put it this way. What's telling about whether there was reasonable suspicion, there's also in the record that when the question, detective's question, if Mr. Scott had kept walking, before I get there, he says when they pull on the scene, they see no criminal activity afoot. When they pull up on the street, detective says he's going to ride around, just look for people standing on the street based on anonymous tip and go up to them. But when specifically asked if Mr. Scott had kept walking after you commanded him to stop, detective says, would you have stopped him? And detective Harris says, no, I would have followed him. I wouldn't have tried to stop his forward movement, but I would have followed him. Well, I think we draw from that, and I think the judge was listening to this, is that if you're going to follow someone and not stop them, you don't have reasonable suspicion to stop them. I think he, at that point, let it be known that I really didn't have a reason to be having this interaction with this guy, because I'm going to let someone I suspect, if something's suspicious, keep walking, and that's what he – those are his words. And I think, at that point, he was trying to make it appear to be a consensual encounter, but it's not a consensual encounter because he has no reason to be stopping this boy. He didn't have a reason to stop him to begin with. Exactly. Now, your client raised his hands and the butt of the weapon showed? Yes, sir, Your Honor. He wasn't asked to raise his hands. When the detective says, you don't have to leave, can you step back over here, he turns around and says, hey, I haven't done anything wrong, and that's when they see the butt. Similar – and our position on that is similar to the California v. Haddari case. At that point of that assertion of force, if he doesn't detain him or seize him at that point, what happens after that is irrelevant. But because he does unlawfully detain him at that point without cause, then that's when it's exposed at that point, Your Honor. But then the officers didn't see the butt of the gun? Oh, yes, sir. That gives them enough to make the detention or the arrest or whatever? At that point, and that's what the court said, they said the court said at that point that a second reasonable suspicion developed at that point because the first one was based on the anonymous tip, and the court said the second – The tip plus. The tip plus. The adjusting and the walking away. I agree, Your Honor, but in its ruling, the court focused more so on the anonymous tip than the other – No, but we're looking at whether it's sufficient to uphold what the judge did, not – so if the judge got to the right place for the wrong reason, we still affirm. Yes. Okay. But he's walking away from a police officer. Does that create reasonable suspicion?  He was free to go. Assuming that he was free to go, that's not necessarily an unfriendly question. Is that one of the things we put in the mix under our case law? Do we have to, that he's walking away? No. I think we have to look at something more, and I believe that's the issue that the officers – when they first got out there in an unmarked car, when they realized they were police officers, that's when he got fidgety, adjusted his waistband, started to walk away and all that. So that's the context with the tip, et cetera. Thomas. Thank you. Cleveland. Afternoon, Your Honors. When – again, it's Cleveland for the government. When Ricky Scott turned back to Detective Harris, revealing the butt of his pistol, the police had simply stopped to ask questions of the men in the street, which is something they were entitled to do. What Detective Harris said to Ricky Scott was, you don't have to leave. Could you step back over here? That's from the record at 383. That is – Judge Haines, you quoted it exactly right. Could you step back over here? It was not a command. Could you step back over here? Detective Harris also said, I advised him he didn't have to leave, asked him to step back over here. Okay. So is the judge's conclusion that that was a detention a finding of fact or a conclusion of law? I would submit that that was a conclusion of law because the characterization of the police conduct for purposes of the constitutionality of the conduct is an ultimate conclusion, which is a conclusion of law. The judge did make findings. The judge said, at record 401, the officer told him, you don't have to leave, but then asked him to step back over. So the judge is making factual findings. He certainly credited the detective. This was undisputed. He was the only witness who testified. There was no evidence presented to the contrary. In the mask decision that we cite in our brief, the Court, I'm sure, is familiar with, says that the ultimate conclusion is a question of de novo. And, of course, as Judge Elrod, you mentioned, this Court can affirm on any basis established in the record, and we would submit that simply asking Scott to stay involved no coercion and did not amount to a Fourth Amendment seizure. Assuming, arguendo, that we instead believe that the Court made a factual finding that there was a detention based upon his hearing the officer and opining that a reasonable person wouldn't feel free to leave given the inflection and the stature of the officer and all of that because the Court was able to observe all of that, how could we possibly find clear error? Well, I really don't think that the Court did not apply any of the mask factors, which are the factors that this Court directs district courts to consider in making a determination as to whether there's been a seizure. There's no suggestion of coercion in the record. There was no show of force. There were no weapons drawn. No intimidating language was used. You're saying if there was a finding of detention, it is clearly erroneous because there's no evidence to support it? That's right. There's absolutely no evidence. But if an officer says, please step over here, in this day and age, doesn't a reasonable person step wherever the officer says, please step over here? That's not what the record shows happened here. The record shows... Could you please step over here? Is this person going to think they're going to get shot if they don't? I don't think a reasonable person would think that, and I think the person who's responding could say anything in response to that. Say, I've got something on the stove. I've got to run back to my house. I've got to be somewhere. I'm late to my N.A. meeting. Anything. Could you please step over here is kind of one of those, isn't that kind of like a passive-aggressive command where you actually think the person's going to do it? People talk like that to their children. Could you please do such and such? It's understood in the context that you're being polite when you're saying it, but that it's a command. Well, if you look at the language that we cite in the cases that we presented to the court in our 28-J letter and in our brief, the courts of appeal and the Supreme Court. We've affirmed courts that have said that it was permissive and consensual, but we haven't reversed courts that have said it's not. That's the problem. If the court heard it and said, I think it was a command in the context and therefore it was detention, I think we're on shaky ground to say it's not. We're not asking the court to do anything but affirm, and we're asking the court to affirm on a basis that's in the record. The judge said, I had a question in my mind whether this was actually detention. That's at Record 394. That conclusion is not entitled to any deference according to the mask decision that we cite. This is what we argued below. The only reason we're presenting it to you is because we think it's the first question you come to. Was there a seizure at all? And so you get to that question. Why would you argue, Endo, that there was a seizure? You're going to tell me why you win anyway. Yes. We think it's a modest intrusion. It gets balanced against what the police were trying to accomplish. They simply asked him to stay. We think that was reasonable under all the circumstances. They were responding, the police were responding to a tip about illegal drug activity. The tip involved a particular address. We can see that the tip alone is insufficient as a matter of law. It's really important because we have these tips all the time, and we're developing case law about these tips. So does the government agree that the tip alone is not the sort of tip that would be satisfactory? This tip would not be satisfactory. Okay, thank you. I appreciate that. The tip did say there would be males found in front of this industry, in front of this particular address, waiting for cars to come through. That tip was confirmed by what the police saw, several males standing around at the specific location. The police already knew about this location for its drug activity. Detective Harris testified it was a crime-infested area. His report said there was a lot of drug, a lot of narcotic activity there. That's a record 255. See, the thing that bothers me a little bit about that is you have parts of any city where, you know, there are drug dealers, there are drug transactions going on, but there are also regular people who, frankly, can't afford to move, living in those same neighborhoods, trying to not get shot by drug dealers. And so the fact that you have a guy standing around in a high-crime area doesn't, to me, make that person a criminal. That's exactly right, and we're not. We certainly don't. Okay, so what takes this from just a regular guy standing around in a high-crime area to a Terry stop, again, assuming that the detention finding was correct? You've got the tip. You have it being corroborated. The police were entitled to get out and ask questions to confirm or dispel the suspicion. But if I'm—I don't want to answer any questions. I'm standing around in a high-crime area. I don't want to answer any questions. You don't have to answer any questions. Now what? You don't have to answer any questions. Can you detain me? Well, that's not our case, obviously, but you really have to look at all the facts together in context. We have the context of the fact the police knew this was a drug-infested area. We've got the tip. We have it being corroborated. And then you have to look at what happened when the police got out. You've got the things that the court has referenced in the questions, the fact that this particular defendant began to get fidgety. He sort of hoisted himself around his waist. That's at Record 374, adjusted his waistband. He began to walk off. And at that point, all the officer did was try to preserve the status quo of the situation. This is something that the case of Adams v. Williams, a Supreme Court case the defendant cites. There, a brief stop to maintain the status quo momentarily while obtaining more information may be most reasonable in light of the facts known to the officer. So just preserving the status quo, asking him not to leave, and that's, of course, when he turns around and there's the gun in plain view giving probable cause to do the seizure. We'd argue it had not been a seizure up until that point. He turns around, and that certainly, given all the factors, there was reasonable suspicion. So are you saying that when the officer said stop, why don't you come over here, whatever it was, that that was not a seizure? The words that the Detective Harris used that are in the record, and the mask factors that are identified by this court that are not in the record, we would say it was not a seizure. This was a very, very modest thing to do to ask somebody to remain. Of course, he turns around and there's a gun. Now, in answer to your question, Judge Prado, this defendant was not asked to raise his hands. That is not in the record. He was not asked to raise his hands. Could I ask one quick question? Yes. The district court seems to act like there was a new reasonable suspicion that arose in its analysis. Are we supposed to rely upon that type of analysis, that a second level of reasonable suspicion arose at this point? Or do we need that here? I took him to mean that when the judge had gone with the reasonable suspicion as required to ask this defendant to stop. Okay. And then when he turns around, there's a higher level of reasonable suspicion because he sees the gun. That's how I interpret it. I'll ask Your Honor to confirm. Keller? May I proceed? I just want to address a few issues. A counsel officer was asked about the statements that were made by Detective Harris. And I think there's some issue or dispute over whether it was a request or a command. And that's the issue with what the court was allowed to hear. And one instance he says, you don't have to leave, could you step back over here? And the other instance he says, you don't have to leave, you can step back over here. Either way, there was never a request, like the case of the government sites as far as asking, can I ask you a couple of questions? Our position is either one of those statements, the way that it's put, it would leave a reasonable person to believe, and I think the court considered that, that they were not free to go. We asked earlier about what would happen if he kept walking, or is it a crime to keep walking? Well, I do a lot of criminal work, and trust me, I've had a lot of clients that get charged with refusal to comply, disorderly conduct, when officers say, stop. And so it's given a pass to officers to walk up, and Detective Harris stated, we didn't see anything wrong when we came on that street. I would have let him keep walking. He was there to stop and detain anybody he saw standing in the street without cause, without suspicion of any behavior. And so his intent when he got there, by his actions, and the court got to consider this, was to be a presence in this area and question anybody for any reason. So when this gentleman walked off, or decided to, and walking off became a crime at that point. Because it drew his attention, so he was already saying, you can't walk off when the police arrive. So why would he be free to leave if my walking off from police just pulling up, and he lived in the area, is reason to be stopped. So clearly the court here, in all of these circumstances, ruled, and again, the government attempted to argue that this was a consensual encounter. The court made a factual finding, and the government now wants this court to find that there was a consensual encounter where, because they know the standard, if it's a factual finding, it's clear error, the government's been attempting to skirt around that and say, well, no. Even in the brief writing and responding, they don't want to come out and say, well, the court got it wrong. But it was a detention. It was a detention. It was a seizure. And there was no, it wasn't supported by any reasonable suspicion. And we believe that that decision should be overturned. This case should be sent back. And if there are any questions, I'll be free to take those at this time. Thank you. The court will take a short recess.